## HESTER HENDERSON, Ex Parte.

PRIVILEGE OF WITNESS — HUSBAND AND WIFE — Under Section 1,
Edmunds-Tucker law, 24 Stat. 635, providing "that in any pro-
ceeding before a grand jury, etc., in any prosecution for bigamy,
polygamy or unlawful cohabitation, etc., the lawful husband
or wife of the person accused shall be a competent witness and
may be called, but he or she shall not be compelled to testify,
etc., without the consent of the husband or wife as the case may
be," etc., the privilege is a personal privilege of such witness
called.

ID. ID.—GRAND JURY—CONTEMPT—In an investigation before the
grand jury, a witness answered that she was the lawful wife
of accused, that she was married to accused on a certain day,
thereupon she was asked whether the accused on the same day
did not marry another woman, which question witness refused
to answer, and on being brought into court again declined to
answer, whereupon witness was adjudged guilty of contempt;
*held* on *habeas corpus* that the question asked was material in
order to determine the validity of witness' claim of privilege and
that an answer might be enforced.

Hearing upon the Return of a Writ of *habeas corpus*
original in the Supreme Court of Utah Territory. The
facts are stated in the opinion of the Court.

*Messrs. Sheeks and Rawlins* and *Messrs. Richards and Moyle* for the Petitioner.

*Mr. Ogden Hiles*, Assistant U. S. Attorney, *contra.*

BOREMAN, J.:

The petitioner was adjudged guilty of contempt, and committed to prison, for refusing to answer a question propounded to her by the grand jury of the District Court at Ogden, where she was a witness. The grand jury had under investigation a charge of polygamy against one John Hendrickson, and had received testimony tending to show that said John Hendrickson had married two women on the 1st day of January, 1885, at the same time, by the same ceremony, or on the same day, namely, said Hester Hendrickson and another woman named Mary Lloyd. When the petitioner had been sworn as a witness before the grand jury, she claimed that she was the lawful wife of the said John Hendrickson, and that as such she was exempt from giving testimony. Upon inquiry by the grand jury touching her claim of exemption, she testified, without objection, that she was married to said John Hendrickson on the 1st day of January, 1885. Further, with a view to ascertain whether in fact she was the lawful wife of said John Hendrickson, as she claimed, the said jury asked whether John Hendrickson, on the same day that she married him, married another woman named Mary Lloyd. She declined to answer this question, and the matter was referred to the Court. The grand jury and the witness were by the Court instructed that it was the duty of the witness to answer the question, and to answer all questions put by the grand jury touching the inquiry as to whether she really was the legal wife or not of said John Hendrickson, and that her testimony could not be used by the grand jury against said John Hendrickson if it should appear that she was the lawful wife ; that the inquiry was made with a view merely to ascertain whether she was such legal wife or not. Upon returning to the grand jury room she again declined to answer the question, and the matter was again referred to the Court by the grand jury. The witness was asked by

the Court, in the presence of the grand jury, whether she would answer the question. She replied that she would not, and would not obey the order of the Court requiring her to do so. The Court adjudged her guilty of contempt, and committed her to prison ; there to remain until she should answer the question, or be legally discharged.

The matter for our examination is whether the Court had the authority to remit to the grand jury the question as to the competency of the petitioner as a witness, and this question depended upon the proof of a fact. If she were the lawful wife of said John Hendrickson she was *prima facie* a competent witness under the first section of what is commonly known as the Edmunds-Tucker law of Congress. 24 Stat., 635, Comp. Laws Utah 1888, p. 114. But by the same law it appears that if she were the lawful wife she could not, in a case against her husband, be compelled to · testify against her consent. In order to ascertain whether she was the lawful wife it was necessary to ascertain whether she was the first wife. That was clearly a question of fact. The question which the grand jury asked the witness plainly showed that the object of the inquiry was whether really the witness was the first wife, as she claimed to be. If she were not, her claim of exemption from testifying would fall. Before the grand jury could require her to testify in the case against John Hendrickson they must be satisfied that she was not the first wife. The question of her competency was one of mixed law and fact, but not a question of doubtful law—such a one as they would need the advice of the Court upon. The grand juries are, and always have been, bodies of extensive powers. Their examinations are in secret, and these extensive powers are given to them that they may be enabled to privately and thoroughly search out the truth in all cases. They are given, to some extent at least, powers to pass upon legal questions, under the direction of the Court. Our Territorial Statute says : "The grand jury can receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence." 2 Comp. Laws 1888, p. 584, par. 4914. The grand juries are thus to be guided by the general rules of evidence, subject only to the supervisory charge and

control of the Court. If a witness refuses to answer any question, the grand jury cannot enforce the rule requiring an answer, but must refer that matter to the Court. The Court can then only inquire whether the question be a proper one. Here the inquiry was as to the competency of the witness. The question asked by the grand jury, and which the witness refused to answer, would have aided the grand jury very materially in ascertaining as a fact whether her claim of being the first wife was valid or not. If she had answered that she knew of no one else having been married to the accused on that day the answer could have tended to confirm her claim of exemption, but, had she made answer that another woman was married to the accused on that day, further inquiry may have disclosed that such marriage was prior to her marriage.

She would then not have been the first wife, and her claim to being the lawful wife would have been invalid. She had been instructed, as had the grand jury, that such evidence was simply to ascertain her competency, and could not be used by the grand jury against the accused. Her claim of exemption from giving testimony could not be set up as against such a question. It was not a question as to her giving evidence against the accused. The investigation had not reached the point where her claim of exemption could be set up. The *Miles Case*, 103 U. S. 304, to which our attention has been called, does not seem to be applicable. The inquiries in that case had reference to the guilt or innocence of the defendant therein. It was evidence in the case against him. But such is not the fact in the case we are considering. Here the inquiries could not be used against the accused, but were merely to ascertain whether she was a competent witness to give testimony against him. It is true that in the *Miles Case* the Court said that "the testimony of the second wife to prove the only controverted issue in the case, namely, the first marriage, cannot be given to the jury on the pretext that its purpose is to establish her competency." That rule was laid down under a former Territorial Statute which said : "A husband shall not be a witness for or against his wife, nor a wife a witness for or against her husband." Comp. Laws

Utah 1876, § 1604. Under that statute the Court in the
*Miles Case* recognized that the wife was *prima facie* incompetent. The Court said in that case : " Witnesses
who are *prima facie* competent, but whose competency is
disputed, are allowed to give evidence on their *voir dire* to
the court upon some collateral issue on which their competency depends, but the testimony of a witness who is
*prima facie* incompetent cannot be given to the jury upon
the very issue in the case, in order to establish his competency, and at the same time prove the issue." Our local
statute then absolutely disqualified the wife, and the accused could object to her testifying. But the later act of
Congress—the Edmunds-Tucker act above referred to—
has changed this completely. The accused cannot raise
any valid objection, but as to him she is a competent witness. The exemption is wholly a personal privilege of the
witness. The Edmunds-Tucker law reads as follows :
" Section 1. That in any proceeding or examination before a grand jury, a judge, justice or a United States commissioner, or a court, in any prosecution for bigamy, polygamy or unlawful cohabitation, under any statute of the
United States, the lawful husband or wife of the person
accused shall be a competent witness, and may be called,
but he or she shall not be compelled to testify in such proceeding, examination or prosecution without the consent of
the husband or wife, as the case may be," etc. 24 Stat.
635. 1 Comp. Laws Utah, pp. 114, 115, § 1. Had this
statute been in existence when the *Miles Case* was decided,
it is evident that the ruling of the Court would have been
different, as the first wife is under this latter statute a competent witness. We see no reason to doubt the authority
of the grand jury to make the inquiry as to the competency of the witness when such competency depended
wholly upon the proof of a fact. That fact the jury had
the right to know in order to ascertain whether the witness
was the lawful wife of the accused, notwithstanding the
general rule that the competency of a witness is a question
for the Court. It is not necessarily for the Court where it
depends upon a fact. The ascertainment of that fact decides the question. The simple claim of the witness that

she was the lawful wife is not the proof of a fact and is not conclusive. We think the question asked the petitioner by the grand jury was a proper one, and the District Court had full authority to require her to answer. The prayer of the petitioner for her discharge is denied, and she is remanded to the custody of the marshal.

SANDFORD, C. J., (concurring):

The petitioner herein claimed to be the wife of John Hendrickson, and as such not to be required or compelled to testify before the grand jury against him. The grand jury had the right to ascertain this primal fact. When this had been clearly established, then, and not before, could the petitioner successfully insist on her exemption. The question, "Did Hendrickson marry Mary Lloyd the same day he married you?" was directed to this question of fact. If it was shown to the grand jury that he had married the same day another woman before he married the petitioner, she was not his legal wife, and therefore not exempt from testifying. When all the facts had been adduced before them, then, if there was still a claim to the exemption, it was a question for the court to decide whether, in view of all the facts, she was the legal wife of the accused. If the question asked had not been connected with the exemption which the petitioner claimed, a different case would have been presented. The grand jury may not override the statute allowing the exemption, but they are authorized to ascertain how much weight and substance there was to be given to her declaration that she was the legal wife. The surrounding circumstances, which go to show her legal marriage, were proper and material. The jury was not to be estopped from the further examination by the assertion that she was legally married. It was incumbent on the petitioner to show that she was, under the law of Congress, the first wife of the accused. And the question proposed was sufficient to bring out the priority of her marriage. Every question which tended to establish her right to an exemption was proper. The case is in some respects similar to the disqualification of a clergy-

man from disclosing any confession made to him in his professional capacity. This exemption is based on the fact that he is a clergyman or priest. And that fact must first be established before he can be allowed or required to testify. His answer that he is a clergyman is not conclusive on the jury. They may interrogate his claim, and by a searching examination, test it. The power of a grand jury is co-extensive with, and limited by, the criminal jurisdiction of the court to which it is an appendage. It clearly appears that the District Court had jurisdiction, and that the proceedings are regular, and valid upon their face. The writ must be dismissed, and the prisoner remanded to the custody of the marshal, there to remain until she shall show herself willing to purge herself of the contempt for which she stands committed.