The **ALASKA BOARD OF FISH AND GAME** and the Alaska Department of Fish and Game, Appellants,

v.

**Dennis THOMAS, Appellee.**

**No. 5595.**

Supreme Court of Alaska.

Nov. 13, 1981.

Sarah Elizabeth Fussner, Asst. Atty. Gen., Anchorage, Wilson L. Condon, Atty. Gen., Juneau, for appellants.

Sandra K. Saville, Kay, Christie, Fuld, Saville & Coffey and Sue Ellen Tatter, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

OPINION

MATTHEWS, Justice.

Dennis Thomas owns an M–4 Maule airplane that he uses for hunting. The registration symbols on the airplane are three inches high. In 1980, the Alaska Board of Game promulgated a regulation requiring aircraft of 5,200 pounds gross weight or less used for hunting, or transporting hunters or game, to display their registration marks

with symbols at least 12 inches high.[1] From 1961 until 1977, the Federal Aviation Administration required that light aircraft display registration numbers having a minimum height of 12 inches. Subsequently, the minimum size was reduced to three inches.[2]

The question in this case is whether federal law precludes the state from enforcing this regulation. The trial court held that federal law had preempted the field of air commerce and granted Thomas his requested declaratory relief that the Board of Game regulation be found invalid.[3] We disagree and reverse.[4]

In *Webster v. Bechtel*, 621 P.2d 890, 897 (Alaska 1980), we drew upon the Supreme Court's summary of preemption law presented in *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157–58, 98 S.Ct. 988, 994, 55 L.Ed.2d 179, 188–89 (1978) (citations omitted):

> The Court's prior cases indicate that when a State's exercise of its police power is challenged under the Supremacy Clause, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Under

the relevant cases, one of the legitimate inquiries is whether Congress has either explicitly or implicitly declared that the States are prohibited from regulating the various aspects of oil-tanker operations and design with which the Tanker Law is concerned. As the Court noted in [*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947)]:

> [The congressional] purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.

Even if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a valid federal statute. A conflict will be found

---

1. The regulation 5 A.A.C. 81.120(8) provides:
 *General Provisions.* The following methods and means of taking game are prohibited:

 . . . . .

 (8) no hunter, aircraft operator, or pilot may use an aircraft certified for 5,200 pounds gross weight or less, knowing or with reason to know it is being used for the taking of game, transporting hunters, game animals or parts thereof, or hunting gear (except gear required by AS 02 for survival), unless the aircraft is marked with its Federal Aviation Administration registration numbers in plainly visible, permanent symbols reading horizontally in contrasting colors at least 12 inches high with lines at least 2 inches wide, on each side of the fuselage; however, this section does not apply to regularly scheduled flights to and between airports or villages by carriers that normally provide scheduled service to those airports or villages.

2. The amended regulation, 14 C.F.R. 45.29 (1980) now provides in relevant part:
 *Size of marks.* (a) Except as provided in paragraph (f) of this section, each operator of

an aircraft shall display marks on the aircraft meeting the size requirements of this section.
 (b) *Height.* The character marks must be of equal height and on—
 (1) Fixed-wing aircraft must be at least 12 inches high, except that marks at least 3 inches high may be displayed on small aircraft when none of the following exceeds 180 knots TAS:
 (i) Vc
 (ii) Vmo
 (iii) Vno and
 (iv) If Vc, Vmo, or Vno has not been determined for the aircraft, the speed shown to be the maximum cruising speed of the aircraft;

 . . . . .

3. The trial court found that there was no conflict between the state and federal regulations, but that federal aviation law had "occupied the field," and thus invalidated any attempt by the state to regulate in the field.

4. An order of reversal was entered on June 24, 1981 in the interest of expedition. This opinion explains our reasons.

"where compliance with both federal and state regulations is a physical impossibility . . . ," or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

We also noted that:

[p]reemption tests or standards are necessarily phrased in general or abstract terms which are of limited usefulness in applying the principle to a concrete set of facts. In each case, a balance must be struck between the competing demands of federal uniformity and local autonomy.

621 P.2d at 897, *quoting Bald v. R. C. A. Alascom*, 569 P.2d 1328, 1331 (Alaska 1977).

No explicit congressional expression of an intent to preempt exists in this case. In examining whether there is an implied intent to occupy the field, congressional intent will not be lightly inferred. 621 P.2d at 898. With these principles in mind, we turn to an examination of the trial court's holding and the facts of this case.

We disagree with the trial court that *Lockheed Air Terminal v. City of Burbank*, 457 F.2d 667 (9th Cir. 1972), *aff'd* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973) provides controlling precedent. *Lockheed Air Terminal* invalidated an ordinance by the City of Burbank that prohibited nighttime commercial jet take-offs in order to reduce noise pollution. The Ninth Circuit ruled that the Federal Aviation Act of 1958, 49 U.S.C. § 1301 *et seq.*, the statute in question here, occupied the field of air commerce, 457 F.2d at 670–75, and that the local and federal statutes were in conflict, a conflict inevitably fatal to the local enactment. 457 F.2d at 675–76. The Supreme Court affirmed the decision on more limited grounds, stating: "It is the pervasive nature of the scheme of federal regulation of aircraft noise that leads us to conclude that there is preemption." 411 U.S. at 633, 93 S.Ct. at 1859, 36 L.Ed.2d at 554. Justice Douglas, writing for the Court, also noted, "each case turns on the peculiarities and special features of the federal regulatory scheme in question." *Id.* at 638, 93 S.Ct. at 1862, 36 L.Ed.2d at 556 (citations omitted). We find the present case distinguishable.

First, the Supreme Court in *Lockheed Air Terminal* expressed a concern that disparate local ordinances "would severely limit the flexibility of the F.A.A. in controlling air traffic flow," *id.* at 639, 93 S.Ct. at 1862, 36 L.Ed.2d at 557, frustrating a central goal of the Federal Aviation Act of 1958 to centralize air traffic flow control. *See* [1958] U.S.Code Cong. & Ad.News 3741, 3741–4 [H.R.Rep.No. 2360 85th Cong., 2nd Sess.]. The need for uniformity of noise regulation was thus an important underlying rationale for the finding of preemption.

Here, uniformity of registration symbol height does not strike us as a matter of overriding federal concern. The federal regulation allows for variations in symbol size so long as minimum requirements are met. 14 C.F.R. 45.29 (1980). That only minimum requirements are imposed indicates that the federal and state requirements are compatible in this area. *See Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 147–48, 83 S.Ct. 1210, 1220, 10 L.Ed.2d 248, 260 (1963).

Second, in the absence of a federal need for uniformity, compliance with state symbol height requirements does not stand as an obstacle to the effectiveness of the federal presence in regulating air commerce in any tangible fashion. The Board of Game regulation does not affect aircraft in general commerce. Out-of-state pilots may fly planes to Alaska and in Alaska with three inch registration symbols. What they may not do is participate in hunting or related activities with aircraft so marked. Nor does the Board of Game Regulation undermine the federal desire to promote safe and efficient use of navigable air space which prompted the enactment of the Federal Aviation Act of 1958. [1958] U.S.Code Cong. & Ad.News 3741 [H.R.Rep. 85th Cong., 2nd Sess.]. Further, the cost of compliance with the regulation is not so burdensome as to prevent pilots with three inch symbols from using their planes for hunting activities. Thomas acknowledges that twelve inch decals could be applied to planes for about $50.00. Thus planes with

F.A.A. approved three inch registration symbols can be converted to conform to the twelve inch height requirement so the pilot may participate in hunting.

Third, in contrast to the lack of federal concern for uniformity, there is a clear state interest in protecting its game resources from illegal hunting facilitated by mobile and unidentifiable small aircraft. "There can be no question but that there is a very strong state interest underlying hunting restrictions." *Frank v. State*, 604 P.2d 1068, 1073 (Alaska 1979). This regulation is but one aspect of Alaska's regulation of aircraft for hunting and associated activities.[5] That the present regulation, in furthering this important state interest, touches upon an area regulated by the federal government does not necessarily compel a conclusion of preemption. *See DeCanas v. Bica*, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976); *Merrill Lynch, Pierce, Fenner & Smith v. Ware*, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973); *Head v. New Mexico Board of Examiners in Optometry*, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963).

Fourth, the detailed nature of the federal symbol height regulations does not alone justify an inference of an intent to preempt. Mere detail is not dispositive because "[t]he subjects of modern social and regulatory legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem." *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 415, 93 S.Ct. 2507, 2514, 37 L.Ed.2d 688, 696 (1973). Here, the weight to be afforded the detailed nature of the federal regulations is outweighed by other factors discussed above.

Finally, the present case lacks the extensive legislative history present in *Lockheed Air Terminal* that explicitly expressed a concern that the aviation industry be subject to uniform federal noise pollution standards. 411 U.S. at 634–38, 93 S.Ct. at 1860–62, 36 L.Ed.2d at 554–56.

For these reasons, we find that the necessary intent to preempt the state regulation should not be inferred. The trial court judgment is accordingly REVERSED.

---

5. *See, e. g.*, AS 16.05.257(b)(2) (empowering the Board of Game to regulate the use of aircraft in subsistence hunting areas); 5 A.A.C. 81.120(3) (helicopters barred from use in hunting); 5 A.A.C. 81.120(5) (illegal to use airplane to drive, herd or molest game); 5 A.A.C. 81.231 (airplanes barred from use in hunting, transporting hunters or moose in the Paradise Management Area except for regularly scheduled commercial aircraft).