CITY OF KENAI, Charles A. Brown, Acting City Manager, Sue C. Peters, City Clerk, and all current members of the council of the City of Kenai, Vincent O'Reilly, Edward Ambarian, Ronald A. Malston, Betty Glick, Phillip Aber, Charles Bailie and Michael Seaman, Appellants,

v.

KENAI PENINSULA NEWSPAPERS, INC., Appellee.

The MUNICIPALITY OF ANCHORAGE, George M. Sullivan, Mayor, Ruby Smith, Municipal Clerk, Jane Angvik, Paul Baer, Fred Chiei, Ben Marsh, Carol Maser, Rick Mystrom, Gerry O'Connor, Dave Rose, Lydia Selkregg, Don Smith, and Dave Walsh, all current members of the Anchorage Municipal Assembly, Appellants,

v.

ANCHORAGE DAILY NEWS, INC., Appellee.

Nos. 4954, 5433.

Supreme Court of Alaska.

March 26, 1982.

Richard W. Garnett, III, Garnett, Klinkner & Bendell, Anchorage, for appellant, City of Kenai.

Steven H. Morrissett, Julie A. Garfield, Asst. Municipal Attys., Theodore D. Berns, Municipal Atty., Anchorage, for appellants, Municipality of Anchorage.

C. R. Baldwin, Kenai, for appellee, Kenai Peninsula Newspapers.

A. Robert Hahn, Jr., Kevin F. McCoy, Hahn, Jewell & Stanfill, Anchorage, for appellee, Anchorage Daily News.

Before RABINOWITZ, C. J., CONNOR and MATTHEWS, JJ., and VAN HOOMISSEN and TAYLOR, Superior Court Judges.*

## OPINION

MATTHEWS, Justice.

These consolidated cases have as their common issue the question whether our public records disclosure statute, AS 09.25.-110–.120, applies to municipalities. In both cases the superior court ruled that the statute does apply and, for the reasons expressed below, we agree. Each case also raises issues not present in the other, and these will be separately discussed.

## CITY OF KENAI

During June of 1979, the City of Kenai began soliciting applications for city manager. Subsequently, the City Council met, without notice to the public and without keeping minutes, to review applications and interview applicants. Max Swearingen, the publisher of the Peninsula Clarion, a daily publication of Kenai Peninsula Newspapers, Inc., asked the City to release a list of names and a summary of credentials of the applicants. This request was considered by the City Council on August 2, 1979, and rejected. In a letter written to Swearingen, the mayor voiced a concern that such disclosures would jeopardize the applicants' personal privacy, deter future applications from qualified people concerned about pub-

lic exposure, and compromise the council's moral obligation to respect the privacy interests of individual applicants.

Kenai Peninsula Newspapers filed suit to require the City to allow inspection of the applications and to enjoin the City Council from further review and action upon the applications except at a public meeting. The superior court issued a temporary restraining order enjoining "further deliberations toward the appointment of a City Manager for the City of Kenai from which the public is excluded. . . ." After briefing and a second hearing, the superior court entered a decision which concluded that the applications were public records and that the deliberations of the city council concerning appointment of a city manager must be held in public meetings. The court thereupon ordered the city to permit the inspection and copying of the applications and to refrain from any closed deliberations concerning the selection of the new city manager.

The superior court stayed, pending appeal, that portion of its order requiring the immediate release of the applications for employment. The parties then stipulated that the order should be considered a final judgment and that the city would "deliver over to the Plaintiff copies of all resumes and applications of all applicants for city manager who do not choose to withdraw their application upon being notified of the [city's] agreement to release the same." The agreed upon release was made without prejudice to the city's right to appeal the order requiring it. Ten of the thirty-two applicants for the position withdrew their applications upon learning of the possibility of disclosure. Kenai Peninsula Newspapers subsequently moved for disclosure of the names and information concerning the withdrawn applicants. This motion was denied.

## MUNICIPALITY OF ANCHORAGE

In February of 1980, the Municipality of Anchorage began soliciting applications for

---

* Van Hoomissen and Taylor, Superior Court Judges, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

police chief. The nationwide search was conducted through written advertisements which promised that applications would be held in confidence.

From June 1, 1980, through July 8, 1980, Don G. Hunter, a reporter for the Anchorage Daily News, sought access to the names and qualifications of the applicants. The Municipality refused to honor these requests on the grounds that disclosure was prohibited by municipal ordinance, and because confidentiality had been promised to all applicants. The Anchorage Daily News filed suit on July 9, 1980 alleging that the applications and resumes were public documents subject to disclosure and requesting injunctive relief and a temporary restraining order restraining the Municipality from appointing a police chief until a hearing on the merits. Mayor Sullivan appointed a new police chief the next day before the hearing on the temporary restraining order. After the hearing, the court ordered the Municipality to refrain from any action confirming the appointment until a hearing on the merits. The appointee subsequently declined the appointment after disclosures reflecting adversely on his qualifications were made.

The Daily News then learned that Mayor Sullivan had appointed a review committee to assist in evaluating the eighty-nine applications received by the Municipality. The review committee was comprised of local citizens and several municipal employees.

1. AS 09.25.110 provides:
   *Inspection and copies of public records.* Unless specifically provided otherwise the books, records, papers, files, accounts, writings, and transactions of all agencies and departments are public records and are open to inspection by the public under reasonable rules during regular office hours. The public officer having the custody of public records shall give on request and payment of costs a certified copy of the public record.

2. AS 09.25.120 provides:
   *Inspection and copying of public records.* Every person has a right to inspect a public writing or record in the state, including public writings and records in recorders' offices except (1) records of vital statistics and adoption proceedings which shall be treated in the manner required by AS 18.50.010–18.-50.380; (2) records pertaining to juveniles;

The Daily News amended its complaint to allege that the selection process was in violation of Alaska's open meeting law, AS 44.62.310–.312. Following a hearing, the court entered an order for preliminary injunction, supported by findings of fact and conclusions of law, requiring the Municipality to provide the Daily News with the applicants' names and resumes.

Subsequently, the preliminary injunction was modified by stipulation of the parties to provide that the Municipality would contact all applicants to determine whether they wished to withdraw their applications rather than have them made public. The names and information concerning those applicants choosing to withdraw their applications would remain confidential. The parties also stipulated that the preliminary injunction would be considered as a final judgment so that an appeal could be taken to this court. Of the 89 original applicants, 8 withdrew their names. An additional 19 could not be reached within the time frame prescribed by the stipulation and their names were also considered to have been withdrawn.

## APPLICATION OF THE PUBLIC RECORDS DISCLOSURE STATUTE TO MUNICIPALITIES

■ The first question is whether the provisions of AS 09.25.110[1] and AS 09.25.-120[2] are applicable to municipalities.

(3) medical and related public health records; (4) records required to be kept confidential by a federal law or regulation or by state law. Every public officer having the custody of records not included in the exceptions shall permit the inspection, and give on demand and on payment of the legal fees therefor a certified copy of the writing or record, and the copy shall in all cases be evidence of the original. Recorders shall permit memoranda, transcripts, and copies of the public writings and records in their offices to be made by photography or otherwise for the purpose of examining titles to real estate described in the public writings and records, making abstracts of title or guaranteeing or insuring the titles of the real estate, or building and maintaining title and abstract plants; and shall furnish proper and reasonable facilities to persons having lawful occasion for access to the public writings and records for those pur-

A. The parties' arguments focus on the terms of the statute without regard to its historical context. That historical context is illuminating.

At common law, every interested person was entitled to the inspection of public records, including those of municipal corporations. *Mushet v. Department of Public Service of City of Los Angeles*, 35 Cal.App. 630, 170 P. 653 (1917); *Clement v. Graham*, 78 Vt. 290, 63 A. 146, 153 (1906); *State ex rel. Wellford v. Williams*, 110 Tenn. 549, 75 S.W. 948 (1903); *State ex rel. Colescott v. King*, 154 Ind. 62, 57 N.E. 535 (1900).

The history of §§ .110 and .120 demonstrates that the coverage of the common law has consistently been accepted by the legislators of this state. The operative language of § .120 was first enacted by Congress for the District of Alaska as section 1039 of the Act of June 6, 1900, 31 Stat. 321. It read:

> poses, subject to reasonable rules and regulations, in conformity to the direction of the court, as are necessary for the protection of the writings and records and to prevent interference with the regular discharge of the duties of the recorders and their employees.

**3.** § 1039, pt. IV (Code of Civil Procedure), Carter's Ann. Alaska Code (1900).

**4.** The two sections were §§ 717 and 718 Hill's, Title V Ann. Laws of Oregon which read:

> Section 717. Every citizen of this state has a right to inspect any public writing of this state, except as otherwise expressly provided by this code or some other statute.
> Section 718. Every public officer having the custody of a public writing which a citizen has a right to inspect is bound to give him, on demand, a certified copy of it, on payment of the legal fees therefor, and such copy is primary evidence of the original writing.

The Oregon statute also contained four other sections which were not enacted by Congress for the District of Alaska. These sections are:
Title IV
714. Writings are of two kinds:—(1) public; and (2) private.
715. Public writings are:—(1) the written acts, or records of the acts, of the sovereign authority of official bodies and tribunals and of public officers, legislative, judicial, and executive, whether of this state, of the United States, or a sister state, or a foreign country.
716. All other writings are private.
Title V

Every person has a right to inspect any public writing or record in said district, and every public officer having the custody thereof is bound to permit such inspection, and to give on demand and on payment of the legal fees therefor, a certified copy of such writing or record, and such copy shall in all cases be evidence of the original.[3]

The language of this section was similar to two sections in the laws of Oregon[4] which in turn had counterparts in the laws of California,[5] Montana,[6] Utah,[7] and Idaho.[8] Decisions in these jurisdictions construing their acts indicate that it has never been doubted that such acts cover municipal as well as state officials.[9]

Enactment of § 1039 seems to have been meant as a codification of the common law rule with the added intent, perhaps, of eliminating the requirement that the person

> 719. Public writings are divided into four classes:—(1) Laws; (2) Judicial records; (3) Other official documents; (4) Public records kept in this state, of private writings.

**5.** California Code of Civil Procedure §§ 1892, 1893 (Deerings California Codes, 1967).

**6.** Montana R.C. § 10541; 3170–3182 Code of Civil Procedure of 1895, now codified as §§ 2–6–101, 2–6–102 Montana Revised Statutes.

**7.** Utah Code Section 78–26–1 through 3.

**8.** Idaho C.C.P. of 1881 §§ 902, 903, currently 9–301, 9–302 Idaho Code (1979).

**9.** *Gallagher v. Boller*, 231 Cal.App.2d 482, 41 Cal.Rptr. 880 (1964); *Whelan v. Superior Court*, 114 Cal. 548, 46 P. 468 (1896); *Mushet v. Dept. of Public Service of City of Los Angeles*, 35 Cal.App. 630, 170 P. 653 (1917); *Harrison v. Powers*, 19 Cal.App. 762, 127 P. 818 (1912); *San Francisco v. Superior Court*, 38 Cal.2d 156, 238 P.2d 581 (1951); *Coldwell v. Board of Public Works*, 187 Cal. 510, 202 P. 879 (1921); *Miller v. Murphy*, 78 Cal.App. 751, 248 P. 934 (1926); *Jessup v. Superior Court*, 151 Cal.App.2d 102, 311 P.2d 177 (1957); *Santa Monica v. Superior Court*, 204 Cal.App.2d 68, 21 Cal.Rptr. 896 (1962); *Connover v. Board of Education of Nebo School District*, 1 Utah 2d 375, 267 P.2d 768 (1954); *State v. Keller*, 143 Or. 589, 21 P.2d 807 (1933); *State ex rel. Halloran v. McGrath*, 104 Mont. 490, 67 P.2d 838 (1937).

seeking inspection have an interest. When Congress imposed a statutory duty of disclosure in § 1039 on *"every* public officer" it clearly intended to encompass both district and municipal officials; any contention that municipal officials were meant to be relieved of their pre-statutory disclosure duties would plainly be frivolous in view of this language.

Section 1039 continued in effect until 1962, unchanged except for two additions. In 1955 the reference to public writings in recorders' offices was added,[10] followed in 1957 by the addition of the exceptions relating to medical records, those of juveniles, and those records required to be kept confidential by federal or territorial law.[11]

By 1931 the District of Alaska had become an organized territory. In that year the territorial legislature enacted the forerunner of § .110. This enactment, Ch. 107, § 2 SLA 1931,[12] provided:

> The books, records, papers, files, accounts and transactions of every officer, board or institution in the territory are public records, and subject to such reasonable rules as the officer in charge may prescribe, shall be open to inspection by the

public during all the time the respective offices shall be open for business.

Except for the addition of language not relevant here, this section, too, remained unchanged until 1962.[13] Since it can hardly be questioned that municipal officers were encompassed within the meaning of the language "every officer ... in this territory," municipalities were included within the provisions of the predecessor of § .110.

In 1959 Alaska became a state. By that time the predecessors of §§ .110 and .120 had been recodified respectively as §§ 58–1–1 and 58–1–2 ACLA 1949. In 1962 these sections were repealed and re-enacted in their present form. Ch. 101, §§ 3.22, 3.23, SLA 1962. The 1962 re-enactment was accomplished as a part of a comprehensive revision of the entire territorial statutory code of civil procedure. This process was necessitated by statehood. The primary objective of the legislature was to delete procedural provisions from the Alaska statutes in deference to this court's power under the state constitution to promulgate rules of procedure governing proceedings in all courts.[14]

---

**10.** Ch. 32, § 1, SLA 1955.

**11.** Ch. 54, § 1, SLA 1957.

**12.** Codified initially as § 2935, CLA 1933.

**13.** In 1947, language concerning information in the possession of the tax commissioner was adopted. Also added at that time was the phrase "except where otherwise specified or declared." Ch. 46, § 1, SLA 1947. As a result the statute read:

> WHAT ARE PUBLIC RECORDS: INSPECTION.
> Except where otherwise specified or declared, the books, records, papers, files, accounts, writings and transactions of every officer, board or institution in this Territory are public records and subject to such reasonable rules as the officer in charge may prescribe, and shall be open to inspection by the public during all the time the respective offices shall be open for business. Any information in the possession of the Tax Commissioner which discloses the particulars of the business or affairs of a taxpayer, or other person, is not matter of public record, except for purposes of law enforcement and the investigation by any person of law compliance,

> and shall be kept confidential except when production thereof is required in an official investigation or court proceeding; provided, that nothing herein shall be construed to prohibit the publication of statistics so classified as to prevent the identification of particular reports and items thereof, or of the publication of delinquent lists showing the names of taxpayers who have failed to pay their taxes at the time and in the manner provided by law, together with any relevant information which may assist in the collection of such delinquent taxes.

**14.** Alaska Const. Art. IV, § 15 provides:

> *Rule-Making Power.* The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds vote of the members elected to each house.

The process of revision is alluded to in *Silverton v. Marler,* 389 P.2d 3, 5 (Alaska 1964) and is fully described in the Forward to the Alaska Rules of Court, Volume 1, pp. i-vi.

The report of the Alaska House Judiciary Committee [15] makes it clear that no substantive changes in pre-existing law were intended, except in certain enumerated areas not including the inspection and copying of public records.[16] In fact the House Judiciary Committee corrected an error in the Senate Bill concerning the right to inspect records. Existing law read:

> Every person has a right to inspect any public writing or record in said Territory, including public writings and records in recorders' offices. . . .

§ 58–1–2 ACLA (Supp.1958). The initial Senate Bill revised this to read:

> Every person has the right to inspect any public writing or record in the office of any recorder. . . .

SB 105 § 3.25, p. 18, 2d Leg., 1st Sess. (1961). The House Committee changed this to its present form:

> Every person has a right to inspect any public writing or record in the state, including public writings and records in recorders' offices. . . .

§ 3.22 HCS SB 105, p. 18, 2d Leg., 1st Sess. (1961) which differs from preexisting law only in that the term "the state" is substituted for "said Territory." The House Committee noted concerning this change: "Material re inspection and copying of public records is restored because incorrectly revised." [17]

It is therefore evident that the legislature had no intention of changing the scope of the public records law in the 1962 recodification. The common law view that municipalities are required to make their records available to the public was adopted by statute in 1900 and has not been changed.

B. Even without the evidence provided by legislative history, the municipalities' arguments on the language of the statutes could not prevail.

In arguing that §§ .110 and .120 are not applicable, appellants focus on the phrase "all agencies and departments" in the first sentence of § .110. They contend, first,

that this phrase refers only to agencies and departments of the state government. There is no language in §§ .110 or .120 so limiting "agencies and departments." We will not read such a limitation into this language without evidence that it was intended.

Appellants also argue that a municipality as such is not an agency or department and is therefore not covered by § .110. This argument, too, has little to commend it. Conceding, for the purposes of argument, that the legislature would not describe a municipality as an agency or department, it is equally true that the legislature would not describe the state government taken as a whole by using those terms. Municipal governments, as well as the government of the state, encompass agencies and departments. The "agencies and departments" language used in § .110 must be read as referring to the agencies and departments of the governments to which the statute applies, but that language itself does not define what the applicable level of government is.

The adjective used in §§ .110 and .120 which does define the levels of government to which these sections apply is the word "public." Thus, § .110 commands "the public officer" to make available certified copies on request. Similarly, § .120 directs "every public officer" to make unexcepted records available for inspection and copying. We construe the word public as used in these sections to refer both to state and local officials. This construction is in accordance with the ordinary meaning of the term "public" which is that the word refers to all levels of government:

> Having a civil, or official, character, authority, status, or the like; authoritatively serving or representing the public; as, a *public* official, prosecutor, or legislative body; to hold *public* office; also, as in titles of departments, agencies, etc., of the civic or state government; as, *public*

---

**15.** 62 House Journal 390–397 (1962).

**16.** *Ibid.* at 393–397.

**17.** 62 House Journal 395 (1962).

health, relief, welfare or safety.[18] [Emphasis in original]

It would be a corruption of the generally accepted meaning of the term "public" to argue, for example, that the mayor of the municipality of Anchorage is not a public officer. Again, the dictionary agrees, defining the term "public office" as

> An office or position in the service of a nation, state, city, etc.[19]

The first sentence of § .120 provides that:

> Every person has a right to inspect a public writing or record *in* the state.... [Emphasis added].

The legislature chose to say "in the state," not "of the state." The boundaries of a statute are commonly sought and found within its terms. We think that the legislature was conscious of the fact that it was defining scope here. Had the legislature intended to limit the application of § .120 to state agencies and departments, it could easily and clearly have done so.

A more recent legislature's reading of §§ .110 and .120 is apparent in the enactment in 1977 of AS 39.51.020, which provides that no public employee may be disciplined "for communicating matters of public record or information under AS 09.25.110 and AS 09.25.120." "Public employee" was defined in Section (b) of that enactment to include any employee of any state or local government.[20]

The municipalities argue that this section was enacted not because of any legislative belief that AS 09.25.110 and .120 applied to local governments but because local government employees often come into possession of state records which are public and may wish to allow the inspection of these records and need protection from discipline by their employers in so doing. We find this to be a very strained and unnatural reading of the statute. It is far more logical to conclude that the 1977 legislature assumed that §§ .110 and .120 apply to municipalities as well as to the state and concluded that municipal as well as state employees were deserving of protection.

The strongest argument made by the appellants is that the inclusion of municipalities would lead to absurd results since there is no exception for records required to be kept confidential under a municipal ordinance while such an exception does exist for state law.[21] This exception, added by the territorial legislature in 1957, must be viewed in context. The public records disclosure statute had existed without *any* expressed exceptions for more than 50 years. There was no basis under that statute for distinguishing its application between territorial and municipal governments. As discussed *supra*, prior to the enactment of the statute the common law also required disclosure of public records at both the state and municipal levels. However, under the statute prior to the 1957 amendment, as under the common law, exceptions would have been permitted where there was a good reason for them.[22] While it is possible that the 1957 legislature may have committed an oversight in not including an express exception for municipal ordinances, the failure to include such an exception can hardly

---

**18.** Webster's New International Dictionary (2d ed. 1960).

**19.** *Id.*

**20.** AS 39.51.020 provides:
> *Obstruction of access to public information.* (a) No public employee may be dismissed, demoted or suspended, laid off or otherwise made subject to any disciplinary action for communicating matters of public record or information under AS 09.25.110 and 09.25.120.
> (b) As used in this section, "public employee" means any employee receiving compensation for services provided to the state (in-

cluding the University of Alaska) or any political subdivision of the state.
> (c) A violation of this section is a misdemeanor.

**21.** AS 09.25.120(4) excepts from the disclosure requirement "records required to be kept confidential by a federal law or regulation or by state law."

**22.** *See State ex rel. Wellford v. Williams,* 110 Tenn. 549, 75 S.W. 948 (1903); *cf. State ex rel. Colescott v. King,* 154 Ind. 621, 57 N.E. 535 (1900); *Clement v. Graham,* 78 Vt. 290, 63 A. 146 (1906).

mean that the legislature intended to exclude, by implication, municipalities from the basic disclosure requirement. If that had been the legislature's intent, it would, at the least, have changed the words "public officer" in §§ 58–1–1 and 58–1–2 ACLA 1949 to "territorial officer."

In light of the common law rule, legislative history, and our reading of the sections, we will construe §§ .110 and .120, as we would have construed them prior to 1957, as a strong legislative declaration that records in the possession of municipalities shall be available for public inspection, subject to exceptions based on need.

## ARE EMPLOYMENT APPLICATIONS OPEN TO INSPECTION?

■ We turn next to the question whether the appellants were justified in refusing to disclose the employment applications involved in these cases. In general, questions such as these require a balance to be struck between the public interest in disclosure on the one hand and the privacy and reputation interests of the affected individuals and the government's interest in confidentiality, on the other. The process of balancing has been described as follows:

> In determining whether the records should be made available for inspection in any particular instance, the court must balance the interest of the citizen in knowing what the servants of government are doing and the citizen's proprietary interest in public property, against the interest of the public in having the business of government carried on efficiently and without undue interference. The initial decision as to whether inspection will be permitted must, of course, rest with the custodian of the records. And since the justification for a refusal to permit inspection will depend upon the circumstances of the particular case, we can offer no specific guide for that administrative decision.
>
> . . . .

> In balancing the interests referred to above, the scales must reflect the fundamental right of a citizen to have access to the public records as contrasted with the incidental right of the agency to be free from unreasonable interference. The citizen's predominant interest may be expressed in terms of the burden of proof which is applicable in this class of cases; the burden is cast upon the agency to explain why the records sought should not be furnished. Ultimately, of course, it is for the courts to decide whether the explanation is reasonable and to weigh the benefits accruing to the agency from non-disclosure against the harm which may result to the public if such records are not made available for inspection. [Citation omitted].

*MacEwan v. Holm*, 226 Or. 27, 359 P.2d 413, 421–22 (1961) (In Banc).

In striking a proper balance the custodian of the records in the first instance, and the court in the next, should bear in mind that the legislature has expressed a bias in favor of public disclosure. Doubtful cases should be resolved by permitting public inspection.

Appellants argue that they have an interest in "attracting the largest and most qualified applicant pool ..." and that this can best be accomplished by not disclosing the names and resumes of applicants. Further, they argue that applicants have a constitutionally protected privacy interest[23] in keeping confidential the fact that they have applied, and the contents of their applications. They argue that this interest is especially strong under the circumstances of these cases where the applications were made with the expectation that they would remain confidential.

There is a strong public interest in disclosure of the affairs of government generally, and in an open selection process for high public officials in particular. AS 44.62.-312(a) powerfully expresses the philosophy underlying this:

**23.** Art. I, § 22 of the Alaska Const. states in part: "The right of the people to privacy is

recognized and shall not be infringed."

It is the policy of the state that

(1) the governmental units mentioned in AS 44.62.310(a) exist to aid in the conduct of the people's business;

(2) it is the intent of the law that actions of those units be taken openly and that their deliberations be conducted openly;

(3) the people of this state do not yield their sovereignty to the agencies which serve them;

(4) the people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know;

(5) the people's right to remain informed shall be protected so that they may retain control over the instruments they have created.

In addition, §§ .110 and .120 articulate a broad policy of open records.

Public officials such as City Managers, and Chiefs of Police have substantial discretionary authority. The qualifications of the occupants of such offices are of legitimate public concern. Disclosing the names and applications of applicants allows interested members of the public, such as the newspapers here, to verify the accuracy of the representations made by the applicants, and to seek additional information which may be relevant to the selection process.

The applicants' claim that revealing the names and applications of office seekers will narrow the field of applicants and ultimately prejudice the interests of good government is not sufficiently compelling to overcome the public's interest in disclosure. In each of these cases a majority of the applicants did not seek to withdraw their applications rather than make them public. It is not intuitively obvious that most well qualified potential applicants for positions of authority in municipal govern-

ments will be deterred from applying by a public selection process, and we have been referred to no studies tending to prove that point.

The applicants' individual privacy interests in having their names and applications not revealed are also not of an order sufficient to overcome the public's interest. The applicants are seeking high government positions. "Public officials must recognize their official capacities often expose their private lives to public scrutiny."[24] Further, the information sought is that which has been voluntarily provided by the applicants to the municipalities. It is unlikely to be particularly embarrassing if publicly revealed.[25]

It may be that in some cases an individual will not wish his current employer to know that he has applied for another job. That desire is one which cannot be accommodated where the job sought is a high public office. Even if the law did not compel disclosure of each application, at some point before the final selection, as both appellants acknowledge, prudence would require the municipality to contact the employers of those applicants whose applications are being seriously considered.

Nonetheless, in *Anchorage*, the applicants were promised confidentiality, and in *Kenai* several applicants at least assumed that their names and applications would not be divulged. Since the law does not permit a confidential application, we believe that both courts acted properly in allowing those applicants who desired confidentiality to withdraw their applications without public disclosure. There is little or no public interest in the names of withdrawn candidates. On the other hand, those candidates obviously believed that public disclosure would prejudice them in their current positions. With respect to the applicants who withdrew their names, the balance was properly struck in favor of non-disclosure.

---

**24.** Advisory Opinion on Constitutionality of 1975 PA 227, 242 N.W.2d 3, 19 (Mich.1976); quoted in *Falcon v. Alaska Public Offices Com'n*, 570 P.2d 469, 474 n.15 (Alaska 1977).

**25.** *Cf. Falcon v. APOC*, 570 P.2d at 479–80, where we noted that the mere fact that a

named private individual had visited a doctor was not protected private information, but protection did attach if there was a basis for an inference that the person had a potentially embarrassing mental or medical condition.

## THE ANCHORAGE ORDINANCE

■ The Municipality of Anchorage has a public records ordinance codified in § 3.90 of the Anchorage Municipal Code. The ordinance announces a general policy of "the fullest and most rapid access to municipal records and information" requiring "full disclosure of all public records . . . except those specifically exempted under § 3.90.-040 . . . ." AMC § 3.90.010. Part (B) of § 3.90.040 exempts from the requirement of disclosure "personnel . . . files . . . the release of which would constitute an unwarranted invasion of privacy." Another section of the Code includes an employee's application for employment as a part of his personnel file. AMC § 3.30.016A.1.

The trial court held that to the extent that the Anchorage public records ordinance prohibits disclosure of the applications of those seeking the position of Chief of Police it was in irreconcilable conflict with AS 09.25.110 and .120. We agree with this determination.

As we have explained above, state law permits municipalities to make exceptions to the rule of disclosure only on the basis of need. Evaluation of the question of need necessarily involves a balancing process which in the case of applications for a post having substantial discretionary authority

results in the balance being struck in favor of public disclosure. To the extent that the Anchorage ordinance prohibits such disclosure it is directly inconsistent with state law and cannot be accorded substantive effect. It is therefore invalid.[26]

This does not mean that the remainder of AMC § 3.90 must fall. That result would be unwarranted, for the provisions of the ordinance are plainly meant to be severable.[27] Nor does this conclusion call into question the power of Anchorage to enact an ordinance dealing with the disclosure of public records which is consistent with state law. Existing state law is neither so detailed nor comprehensive as to permit an inference that the legislature intended to occupy this field to the exclusion of municipalities. *See Webster v. Bechtel, Inc.,* 621 P.2d 890, 897 (Alaska 1980). *Alaska Board of Fish & Game v. Thomas,* 635 P.2d 1191 (Alaska 1981).

## DELIBERATIONS IN EXECUTIVE SESSION

■ In *Kenai* the court enjoined the City from "any deliberations toward appointment of a city manager unless those deliberations are held in compliance" with the public meetings law, AS 44.62.310–.312.[28] The court held that such deliberations "are not within any of the exemptions of AS

**26.** *See* City of *Kodiak v. Jackson,* 584 P.2d 1130, 1132 (Alaska 1978).

**27.** AMC § 1.05.040 provides:
The sections, paragraphs, sentences, clauses and phrases of this code are severable, and if any phrase, clause, sentence, paragraph or section of this code is declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this code.

**28.** AS 44.62.310 provides:
*Agency meetings public.* (a) All meetings of a legislative body, of a board of regents, or of an administrative body, board, commission, committee, subcommittee, authority, council, agency, or other organization, including subordinate units of the above groups, of the state or any of its political subdivisions, including but not limited to municipalities, boroughs, school boards, and all other boards, agencies, assemblies, councils, departments, divisions, bureaus, commis-

sions or organizations, advisory or otherwise, of the state or local government supported in whole or in part by public money or authorized to spend public money, are open to the public except as otherwise provided by this section. Except when voice votes are authorized, the vote shall be conducted in such a manner that the public may know the vote of each person entitled to vote. This section does not apply to any votes required to be taken to organize the afore-mentioned bodies.
(b) If excepted subjects are to be discussed at a meeting, the meeting must first be convened as a public meeting and the question of holding an executive session to discuss matters that come within the exceptions contained in (c) of this section shall be determined by a majority vote of the body. No subjects may be considered at the executive session except those mentioned in the motion calling for the executive session unless auxiliary to the main question. No action may be taken at the executive session.
(c) The following excepted subjects may be discussed in an executive session:

44.62.310(c)" relating to subjects which may be discussed in executive session. The City of Kenai appeals from this ruling, contending that § .310(c)(2) which permits the discussion in executive session of "subjects that tend to prejudice the reputation and character of any person" is applicable.

The appellee does not contend that the City Council may never go into executive session when discussing city manager applicants. It argues that generally such discussions do not have a tendency to damage the reputation of the applicants, and that the City erred in routinely convening executive sessions.

Appellee's reading of the statute is not without a degree of merit. Ordinarily an applicant's reputation will not be damaged by a public discussion of his or her qualifications relating to experience, education and background or by a comparison of them with those of other candidates. However, a discussion of personal characteristics and habits may well carry a risk that the applicant's reputation will be compromised. Such a risk is especially acute where the qualities of several applicants are being compared. We believe therefore that the City Council was authorized by § .310(c)(2) to meet in executive session while discussing the personal characteristics of the applicants.[29] To the extent that the order of the court prohibits this, it must be reversed.[30]

Accordingly, in *Anchorage*, the order of the superior court is AFFIRMED; in *Kenai*, the order of the superior court is AFFIRMED in part and REVERSED in part.

CONNOR, J., dissents in part.

BURKE and COMPTON, JJ., not participating.

CONNOR, Justice, dissenting in part.

I dissent from the majority opinion. In my view the phrase "all agencies and departments" does not encompass municipal agencies.

(1) matters, the immediate knowledge of which would clearly have an adverse effect upon the finances of the government unit;

(2) subjects that tend to prejudice the reputation and character of any person, provided the person may request a public discussion;

(3) matters which by law, municipal charter, or ordinance are required to be confidential.

(d) This section does not apply to

(1) judicial or quasi-judicial bodies when holding a meeting solely to make a decision in an adjudicatory proceeding;

(2) juries;

(3) parole or pardon boards;

(4) meetings of a hospital medical staff; or

(5) meetings of the governing body of any committee of a hospital when holding a meeting solely to act upon matters of professional qualifications, privileges or discipline.

(e) Reasonable public notice shall be given for all meetings required to be open under this section.

(f) Action taken contrary to this section is void.

AS 44.62.312 provides:

*State policy regarding meetings.* (a) It is the policy of the state that

(1) the governmental units mentioned in AS 44.62.310(a) exist to aid in the conduct of the people's business;

(2) it is the intent of the law that actions of those units be taken openly and that their deliberations be conducted openly;

(3) the people of this state do not yield their sovereignty to the agencies which serve them;

(4) the people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know;

(5) the people's right to remain informed shall be protected so that they may retain control over the instruments they have created.

(b) AS 44.62.310(c)(1) shall be construed narrowly in order to effectuate the policy stated in (a) of this section and avoid unnecessary executive sessions.

29. Care should be taken, of course, to observe the procedures for convening executive sessions set out in § .310(b): The meeting must first be convened as public; the question of holding an executive session concerning excepted subjects must be determined by majority vote; only excepted subjects, and only those mentioned in the motion calling for the executive session, may be considered in the executive session; and no action may be taken at the executive session.

30. In *Anchorage* we are asked to review the trial court's conclusion that the selection committee of the mayor was a committee covered by AS 44.62.310. We decline to do so because no part of the order issued by the court was based on that conclusion and review would be merely advisory.

Before analyzing the language at issue, it is helpful to first set out some general rules of statutory construction. The common and approved usage of words and phrases is to be given effect, "unless such words and phrases have acquired peculiar meaning by virtue of statutory definition or judicial construction." *Lynch v. McCann*, 478 P.2d 835, 837 (Alaska 1970); 2A C. Sands, *Sutherland Statutory Construction* § 46.01, at 48–9 (4th ed. 1974).[1] "[W]here the legislative branch has expressed its intent . . . in language so unambiguous as to leave no doubt as to the meaning or scope of the result dictated, the function of the courts is simply to apply that language." *State v. City of Anchorage*, 513 P.2d 1104, 1109 (Alaska 1973). Every word of a statute should be accorded meaning, 2A C. Sands, *supra*, § 46.06, at 63; but constructions leading to absurd results are to be avoided. *Sherman v. Holiday Construction Co.*, 435 P.2d 16, 19 (Alaska 1967).

My conclusion that AS 09.25.110 does not apply to municipalities is based on four considerations: (a) the terms "agency" and "department" have acquired a particular meaning by legislative definition which is inconsistent with the majority's conclusion; (b) the legislature has always used clear language whenever it has intended a statute to apply to local governments; (c) the majority's construction can lead to absurd results in other areas; and (d) the protective provisions of AS 39.51.020 can be construed consistently with my position.

The legislature always has defined "agency" or "department" as encompassing only *state* agencies or departments. An example is found in AS 40.21, pertaining to the management and preservation of public records:

"(1) 'agency' or 'state agency' *means a* department, office, agency, state board, commission, public corporation or other organizational *unit of or created under the executive branch of the state government*; the term does not include the University of Alaska; . . ." (emphasis added).

AS 40.21.150. Or, in AS 44.62, pertaining to adjudication procedures:

"(1) 'agency' includes the *state* boards, commissions and officers listed in AS 44.-62.330 and those to which this chapter is made applicable by law or executive order involving reorganization under the constitution; . . ." (emphasis added).

AS 44.62.640(b). Again, in AS 37.05, pertaining to fiscal procedures:

"(2) 'state agency,' '*agency*,' 'department,' or similar term *means a* department, officer, institution, board, commission, bureau, division, or other administrative *unit forming the state government*, and includes the Alaska Pioneers' Home and the University of Alaska; . . ." (emphasis added).

AS 37.05.320.

On the other hand, whenever local application has been intended, clear language has been utilized. Legislative enactments distinguish between state departments or agencies and political subdivisions by expressly providing for application to both, or by articulating either parallel or contrasting powers or duties in separate sections.[2] Adopting the majority's construction makes

1. This rule is codified in AS 01.10.040:
   "Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage. Technical words and phrases and those which have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning."

2. For example, AS 09.50.250(1) and AS 09.65.-070(d)(2) (separate provisions for state and municipal immunity from suit); AS 09.55.240(a)(2) and (3) (eminent domain powers granted separately to state and political subdivisions). Other provisions in AS 09.25 distinguish between

state and local "agencies," specifying each when a statute is intended to apply to both. For example, AS 09.25.170(a)(4), concerning the assertion of certain privileges, refers to "an agency or representative of an agency of the state, borough, city or other municipal corporation . . . ."

Further, as Kenai argues, matters directly pertaining to municipal operations tend to be collected in Title 29, even though they often appear in other titles as well. (Title 29 is entitled "Municipal Government"; Title 9, the source of the asserted public disclosure requirement, is entitled "Code of Civil Procedure.") For example, AS 29.23.580 specifies that the open meetings requirement of AS 44.-

such modifying language redundant and thus fails to accord all terms a definite meaning.

A review of other statutes illustrates this point. For example, when addressing records management by governmental units, the legislature delineated local and non-local application. Enacted in 1970, one purpose of AS 40.21 was "to provide for the orderly management of current state and local public records...." AS 40.21.010. The statute distinguishes between "local record," "record," and "state record,"[3] and explicitly addresses management of local records in a separate section.[4] Further, the statute limits the term "agency" to state agencies.[5]

Of greater significance is AS 44.62.310, pertaining to the analogous issue of access to governmental meetings. Enacted sub-

stantially in its present form in 1959,[6] the open meeting requirement explicitly was made applicable to the:

"governing bodies of all State and local government agencies, including municipalities, boroughs, school boards and all other boards, agencies, assemblies, councils, departments, divisions, bureaus, commissions or organizations (advisory or otherwise) of the State or local government ... except juries and such other agencies as shall be expressly exempt by the Legislature...."

Ch. 143 (Ch. 1, art. VI, § 1) SLA 1959. The legislature certainly knew in 1959 how to make a statute applicable to local government; yet when it enacted AS 09.25.-110–.120 three years later, language evidencing such an intent was, and remains, conspicuously absent.[7]

62.310 applies to home rule and general law municipalities, even though AS 44.62.310 makes this clear by its own terms. Another example is AS 14.12.020(a), which is substantially reiterated in AS 29.33.050.

**3.** AS 40.21.150 states, in part:

"*Definitions.* In this chapter, unless the context otherwise requires,

. . . . .

(4) 'local record' means a public record of a city or borough of any class, villages, district, authority or other political subdivision unless the record is designated or treated as a state record under state law;

(5) 'record' means any document, [etc.] ... developed or received under law or in connection with the transaction of official business and preserved or appropriate for preservation by an agency or political subdivision, as evidence of the organization, function, policies, decisions, procedures, operations or other activities of the state or political subdivision or because of the informational value in them; ...

. . . . .

(7) 'state record' means a record of a department, office, commission, board, public corporation, or other agency of the state government, including a record of the legislature or a court and any other record designated or treated as a public record under state law."

**4.** AS 40.21.070 states:

"*Records management for local records.* The governing body of each political subdivision of the state shall promote the principles of efficient records management for local public records kept in accordance with state law. The governing body shall, as far as practical,

follow the program established for the management of state records. The department shall, upon request of the governing body of a political subdivision, provide advice and assistance in the establishment of a local records management program."

**5.** AS 40.21.150(1) states:

" 'agency' or 'state agency' means a department, office, agency, state board, commission, public corporation or other organizational unit of or created under the executive branch of the state government; the term does not include the University of Alaska; ..."

**6.** Although the section has been amended numerous times, it has remained applicable to local governments.

**7.** Although not dispositive, it is interesting to note the repeated legislative efforts to enact a comprehensive public access-to-records act. Those bills always address whether the act should apply to municipalities. *See* CSHB 131 (Judiciary), 10th Legislature, First Session (1977) (making disclosure applicable to "governmental units," subsequently defined to include political subdivisions). *Compare* HB75, 11th Legislature, First Session (1979) ("governmental unit" includes political subdivisions) *with* SCS CSHB 75, 11th Legislature, First Session (1979) ("governmental units" restricted to executive branch agencies). If the current statute applies to local governments, such subsequent legislation would be unnecessary. Inferentially, the legislature has never believed that AS 09.25.110–.120 applies to municipalities.

The majority's interpretation of "agencies and departments" also has the potential of leading to absurd results. For example, AS 09.25.120 authorizes the *state* to exempt certain records from disclosure, which the state has done,[8] but does not grant municipalities the same power.[9] Thus, while state personnel records might not be public, municipal personnel records may be.

The strongest argument that AS 09.25.-110 was intended to apply to municipalities is based on the language of AS 39.51.020. Enacted in 1977, that statute states:

"(a) No public employee may be dismissed, demoted or suspended, laid off or otherwise made subject to any disciplinary action for communicating matters of public record or information under AS 09.25.110 and AS 09.25.120.

(b) As used in this section, 'public employee' means any employee receiving compensation for services provided to the state (including the University of Alaska) *or any political subdivision of the state.*

(c) A violation of this section is a misdemeanor." (emphasis added).

The statute clearly protects local government employees who release information under AS 09.25.110–.120. Although the newspapers argue that this evinces a legislative intent that AS 09.25.120 applies to local governments, I believe that the statute's purpose is to protect municipal employees who come into possession of state agency records and subsequently release them.

Municipal employees may come into possession of state records which are public under state law, but which are confidential under, for example, Anchorage's freedom of

information ordinance. *See* AMC 3.90.010 *et seq.* Anchorage asserts that municipal employees possess state records pertaining to labor agreements, personnel classification and pay scales, demographic and work force statistics, and financial audits of state funded programs. Without the protection of AS 39.51.020, it argues, a municipal employee may be reluctant to release such information, even though public under AS 09.25.110–.120. Thus, the intent of AS 39.-51.020 can be construed as that of precluding the transmutation of a document's public character due solely to a change in governmental hands. Absent a clearer legislative expression that AS 09.25.110–.120 applies to local government, I believe this argument adequately explains the intent of AS 39.51.020.

In light of the constitutional requirement that "[a] liberal construction shall be given to the powers of local government,"[10] I do not believe that AS 09.25.110 should govern access to local governmental records unless the legislative intent to do so is clear. As the City of Kenai argues, "state foreclosure of local policymaking [regarding records] should not occur unless there is (1) an overriding need for a uniform state policy, or (2) reason to believe that local decisions might be unfair to a particular group which is unable to protect itself through the local political process." There is no evidence that such considerations apply here. Thus I believe that the ambiguous provisions of AS 09.25.110–.120 should be limited in application to state agencies or departments, and would, therefore, reverse the superior court's contrary conclusion.

---

**8.** *See* AS 39.25.080; State Personnel Rule § 14.07.0.

**9.** The cities provide another example. If "agencies and departments" in AS 09.25.110 encompasses them, it should similarly do so with respect to AS 44.62.320(a):
"The legislature, by a concurrent resolution adopted by a vote of both houses, may annul a regulation of *an agency or department.*" (emphasis added).
(Originally enacted in 1959 as ch. 143, § 1, SLA; held unconstitutional on unrelated

grounds in *State v. A.L.I.V.E. Voluntary,* 606 P.2d 769 (Alaska 1980).) No one, Kenai argues, would contend that the legislature reasonably intended this provision to encompass regulations of local governmental agencies.

**10.** Alaska Const. art. X, sec. 1. *See Bookey v. Kenai Peninsula Borough,* 618 P.2d 567, 569 (Alaska 1980); *Liberati v. Bristol Bay Borough,* 584 P.2d 1115, 1123 (Alaska 1978); *Jefferson v. State,* 527 P.2d 37, 42 (Alaska 1974). *See also* AS 29.48.310; *Municipality of Anchorage v. Frohne,* 568 P.2d 3 (Alaska 1977).