*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| FRANK GRISWOLD, ) | Supreme Court No. S-16236 |
| Appellant, ) | |
| ) | Superior Court No. 3HO-15-00009 CI |
| v. ) | |
| ) | O P I N I O N |
| HOMER CITY COUNCIL and ) | |
| WALT WREDE, ) | No. 7297 – September 14, 2018 |
| Appellees. ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Homer, Charles T. Huguelet, Judge.

Appearances: Frank Griswold, pro se, Homer, Appellant. Holly C. Wells and Katie S. Davies, Birch Horton Bittner & Cherot, Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I. INTRODUCTION

Frank Griswold submitted public records requests to the City of Homer. He requested all records of communications between members of the Homer Board of Adjustment, City employees, and attorneys for the City leading up to the Board's decision in a separate case involving Griswold. He also requested attorney invoices to the City for a six-month period. Citing various privileges, the City Manager refused to provide any

records of communications surrounding the Board's decision; the Manager provided some complete invoices but provided only redacted versions of some invoices and completely withheld some invoices. Griswold appealed the partial denial of his records request to the City Council; the Council affirmed, and Griswold appealed to the superior court. The superior court substantially affirmed, and Griswold now appeals to us. We affirm with respect to the communications relating to the Board's decision, but we vacate and remand the attorney invoices issue for further analysis.

## II.     FACTS AND PROCEEDINGS

### A.     Griswold's Public Records Request

In November 2014 Griswold submitted two public records requests to the City. The first request was for documents related to a separate case involving Griswold before the Board.[1] Griswold asked for "[a]ll emails, invoices, documents[,] and other records that reveal who provided non-procedural legal advice to the Board regarding the appeal [in the prior case] and who assisted the Board in writing its June 6, 2014 Decision on Appeal." His second request was for "[a]ll invoices for legal services provided to the city between May 16, 2014 and November 11, 2014."

These requests resulted in a considerable number of emails back and forth between Griswold, City Manager Walt Wrede, and City Clerk Jo Johnson. Wrede's ultimate response to Griswold's requests can be divided into two categories — communications relating to the Board's June 6, 2014 decision and attorney invoices. With respect to the communications, Wrede informed Griswold that attorney Holly Wells had assisted the Board in drafting the decision; Wrede did not provide any of the documents or communications involved in this process, explaining that these documents

---

[1]     This case is currently on appeal before us and will be addressed in a separate decision. *See Griswold v. Homer Bd. of Adjustment*, No. 3HO-15-00021 CI (Alaska Super., Jan. 17, 2017), *appeal docketed*, No. S-16660 (Alaska Mar. 24, 2017).

and communications were subject to the attorney-client and deliberative process privileges.[2] Wrede stated, "After the Board made its decision, it passed that decision, along with its reasons and findings, to Ms. Wells and requested that she draft the final [d]ecisional document. The communications were related to clarification of the Board's intent and making sure the decisional document accurately reflected the Board's decision."

With respect to the invoices, Wrede provided Griswold copies of some of the requested invoices, but some of the invoices were partially redacted and others were completely withheld. The invoices were from two law firms: Wells's firm, Birch Horton Bittner & Cherot (Birch Horton), and Levesque Law Group, LLC (Levesque). Wrede provided a Birch Horton invoice dated June 18, 2014, with two lines describing services redacted and a Birch Horton invoice dated September 17, 2014, with five lines describing services and the number of hours billed for services redacted. Levesque redacted parts of 48 lines describing services from the invoice dated October 7, 2014, parts of 13 lines describing services from the invoice dated November 7, 2014, and parts of 8 lines describing services from the invoice dated December 8, 2014. Wrede provided these redacted records to Griswold. Wrede also stated, "All time entries for litigation matters are omitted due to Attorney-Client privilege."

---

[2]     Attorney-client privilege allows a client "to refuse to disclose and to prevent any other person from disclosing confidential communications between the client and the attorney." *Privilege*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also* Alaska R. Evid. 503.

Deliberative process privilege allows public officials to "withhold documents when public disclosure would deter the open exchange of opinions and recommendations between government officials." *Gwich'in Steering Comm. v. State, Office of the Governor*, 10 P.3d 572, 578 (Alaska 2000).

Griswold appealed Wrede's decisions to the Homer City Council. Griswold argued that invoices and time entries were not subject to attorney-client privilege and that Wells's communications with the Board were not subject to attorney-client privilege or deliberative process privilege because Wells was acting as a neutral advisor to the Board and not as an advocate for the Board. He also argued that Wrede's reasons for withholding records and his explanations were insufficient under the Homer City Code.

## B.    City Council Proceedings

The City Council held a hearing on Griswold's appeal. In addition to his arguments about Wrede's decisions, Griswold argued that the Homer Mayor and City Attorney had conflicts of interest and should not participate in the appeal. At the hearing, City Councilmember Bryan Zak disclosed that he received a call about the appeal about a half hour before the hearing but said that he did not discuss the appeal with the caller.

After reviewing the documents in camera, the City Council affirmed Wrede's decisions. It stated that there was no ex parte communications issue because Zak did not participate in deliberations on the appeal. And it ruled that there were no disqualifying conflicts of interest.

Griswold appealed the decision of the City Council to the superior court.

## C.    Superior Court Proceedings

After reviewing the invoices in camera, the superior court determined that the hours billed and names of clients on the two invoices redacted by Wrede were not protected by attorney-client privilege under Homer City Code 2.84.040 and Alaska Evidence Rule 503(b). The court ruled that the rest of the redacted material on these two invoices was protected under the Homer City Code, the Alaska Evidence Rules, and the work-product doctrine.[3] Regarding the invoices that Levesque redacted, the court

---

[3]    The work-product doctrine "provid[es] for qualified immunity of an
(continued...)

-4-                                                              7297

incorrectly stated that Levesque had "substantially waived the attorney-client privilege by later apparently providing [Griswold] with unredacted versions." The court further ruled that Wrede's response to Griswold's public records requests complied with the Homer City Code, that Griswold was not prejudiced by any ex parte communications because Councilmember Zak did not participate in deliberations, and that the Mayor and City Attorney had no conflicts of interest. The court did not discuss the withheld invoices or the communications surrounding the Board's decision, except to say that Wrede provided an adequate justification for withholding them. The court affirmed the City Council's decision in part and remanded with instructions to "provide [Griswold] with versions of the public records he requested in November of 2014, with redactions . . . consistent with [the court's] Order."

Griswold filed a motion for clarification and reconsideration, arguing, among other things, that the court was mistaken in believing that he had received unredacted versions of the Levesque invoices. He requested that the court order the City[4] to disclose the unredacted versions of those invoices. The City opposed the motion with one exception. It conceded that unredacted versions of the Levesque invoices had not been provided to Griswold. But the City suggested that the redacted portions of these

---

[3](...continued)
attorney's work product from discovery or other compelled disclosure. The exemption was primarily established to protect an attorney's litigation strategy." *Work-Product Rule*, BLACK'S LAW DICTIONARY (10th ed. 2014) (first citing Fed. R. Civ. P. 26(b)(3); then citing *Hickman v. Taylor*, 329 U.S. 495 (1947)); *see also* Alaska R. Civ. P. 26(b)(3); *Langdon v. Champion*, 752 P.2d 999, 1004-05 (Alaska 1988). The work-product doctrine is also called the work-product rule or work-product privilege. *Work-Product Rule*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[4]     We will refer to Wrede and the City Council collectively as "the City."

invoices were properly withheld as privileged. The court denied the motion for clarification and reconsideration.

Both Griswold and the City argued that they were the prevailing party for the purposes of an attorney's fees award. The court ruled that the City was the prevailing party, and the City requested attorney's fees. Griswold opposed, arguing that he was a public interest litigant, that some of the City's fees did not qualify for an attorney's fees award, and that the City's fees were excessive. The court applied the pre-2003 public interest litigant analysis and concluded that Griswold was not a public interest litigant. It awarded the City 20% of its attorney's fees.

The superior court's order on the merits, discussed above, was issued on January 22, 2016. On April 26 Griswold filed a motion for contempt, arguing that it had been over three months since the court remanded the case to the City Council but that the Council had not held any proceedings and the City had not provided him any records. He also argued that the court's order required the City to disclose to him the previously withheld invoices. Griswold informed the court that Levesque had recently provided him unredacted copies of its invoices. The City responded by providing a less-redacted version of the September 17, 2014 Birch Horton invoice. The court ruled that "the City did not willfully disregard or disobey the court's January order" and denied Griswold's motion.

Griswold appeals, arguing that all the redacted and withheld records should be disclosed; that he was the prevailing party; that he was a public interest litigant exempt from an attorney's fees award; that if a fee award is to be permitted, a 20% attorney's fees award is onerous; and that the City did not comply with the superior court's order. He does not appeal the superior court's rulings on Wrede's response to Griswold's public records request, Zak's ex parte communications, or the Mayor's and City Attorney's potential conflicts.

## III. STANDARD OF REVIEW

"When the superior court is acting as an intermediate court of appeal in an administrative matter, we independently review the merits of the agency or administrative board's decision."[5]  "[W]hether a privilege applies is a question of law"[6] that does not require deference to the agency or administrative board.[7]  "We therefore apply our independent judgment in deciding the legal issues presented."[8]

"We review for clear error factual findings a court makes in deciding whether to hold a respondent in contempt."[9]

## IV. DISCUSSION

### A. The Public Records Act

Alaska's Public Records Act provides in relevant part, "Every person has a right to inspect a public record in the state, including public records in recorders' offices, except . . . records required to be kept confidential by a federal law or regulation

---

[5]     *Griswold v. Homer City Council*, 310 P.3d 938, 940 (Alaska 2013) (quoting *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 267 P.3d 624, 630 (Alaska 2011)).

[6]     *Capital Info. Grp. v. State, Office of the Governor*, 923 P.2d 29, 33 n.2 (Alaska 1996).

[7]     *Gwich'in Steering Comm.*, 10 P.3d at 577-78.

[8]     *Id.*

[9]     *Anchorage Police & Fire Ret. Sys. v. Gallion*, 65 P.3d 876, 890 (Alaska 2003) (citing *Matanuska Elec. Ass'n v. Rewire the Bd.*, 36 P.3d 685, 700-01 (Alaska 2001)); *see also Czaja v. Czaja*, 537 S.E.2d 908, 917 (W. Va. 2000) ("In reviewing the findings of facts and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review.  We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.").

or by state law."[10]  The Public Records Act applies to all public records in the state including public records of municipalities.[11]  The Act codified the common law rule that "every interested person [is] entitled to the inspection of public records . . . with the added intent, perhaps, of eliminating the requirement that the person seeking inspection have an interest."[12]  We have explained that "[t]he legislature has expressed a bias in favor of public disclosure,"[13] and in 1990 the legislature added findings that "public access to government information is a fundamental right that operates to check and balance the actions of elected and appointed officials and to maintain citizen control of government."[14]

1.      **Exceptions to the disclosure of information under the Public Records Act**

Although the Public Records Act provides a bias in favor of public disclosure, it contains multiple exceptions.  "[E]xceptions to the disclosure requirement should be construed narrowly to further the legislature's goal of broad public access."[15]  At issue in this case is the exception for "records required to be kept confidential . . . by

---

[10]      AS 40.25.120(a)(4).

[11]      *City of Kenai v. Kenai Peninsula Newspapers, Inc.,* 642 P.2d 1316, 1318-23 (Alaska 1982).

[12]      *Id.* at 1319-20; *see also Municipality of Anchorage v. Anchorage Daily News*, 794 P.2d 584, 589 (Alaska 1990) ("Alaska's public records statutes . . . codify the common law right of the public to access to government records." (citing *City of Kenai*, 642 P.2d at 1320-21)).

[13]      *City of Kenai*, 642 P.2d at 1323.

[14]      *Capital Info. Grp. v. State, Office of the Governor*, 923 P.2d 29, 33 (Alaska 1996) (quoting ch. 200, § 1, SLA 1990).

[15]      *Id.*

state law."[16] This provision applies both to express exceptions contained in state law and to common law exceptions, which we consider to be within "state law."[17]

The City argues that the documents in question should be excepted from disclosure under attorney-client privilege and attorney work-product privilege. The City had previously invoked the deliberative process privilege as well, and Griswold discusses this privilege in his briefing.

### a. Deliberative process privilege

"The deliberative process privilege is one of the judicially recognized 'state law' exceptions under [the Public Records Act]. Public officials may assert this privilege and withhold documents when public disclosure would deter the open exchange of opinions and recommendations between government officials."[18] "[T]he question is . . . whether disclosure of the communication sought would affect the quality of governmental decisionmaking."[19]

"[T]he deliberative process privilege is a qualified privilege."[20] To withhold a communication under the deliberative process privilege, the City "must show as a threshold matter that the communication is both 'predecisional' and 'deliberative.'

---

[16]  AS 40.25.120(a)(4).

[17]  *See Fuller v. City of Homer*, 75 P.3d 1059, 1063 (Alaska 2003) ("Alaska's statutory definition of 'state law' encompasses common law as well as positive law . . . ." (citing *Gwich'in Steering Comm. v. State, Office of the Governor*, 10 P.3d 572, 578 (Alaska 2000)).

[18]  *Gwich'in Steering Comm.*, 10 P.3d at 578 (citing *Capital Info. Grp.*, 923 P.2d at 33).

[19]  *Id.* at 579.

[20]  *Capital Info. Grp.*, 923 P.2d at 36 (quoting Russell L. Weaver & James T.R. Jones, *The Deliberative Process Privilege*, 54 MO. L. REV. 279, 315 (1989)).

Once those requirements have been met, the court balances the public's interest in disclosure against the agency's interest in confidentiality."[21]

"To qualify as predecisional, a communication must have been made before the deliberative process was completed. The privilege protects predecisional communications because the quality of the communications received by the decisionmaker clearly affects the quality of the decisionmaking process."[22] "Postdecisional communications are not protected; however, a predecisional communication does not automatically lose the privilege after the decision has been made, for fear that even disclosure of past communications could harm future deliberations. Each case must be considered independently and on its own merits."[23]

To qualify as deliberative a communication "must reflect a 'give-and-take' of the decisionmaking process and contain opinions, recommendation, or advice about agency policies."[24] "Concomitant with this requirement, purely factual material is not protected, and must be disclosed unless 'the manner of selecting or presenting those facts would reveal the deliberative process, or if the facts are "inextricably intertwined" with the policymaking process.' "[25]

---

[21] *Gwich'in Steering Comm.*, 10 P.3d at 579 (citation omitted).

[22] *Id.* (citation omitted).

[23] *Capital Info. Grp.*, 923 P.2d at 35-36 (citation omitted).

[24] *Gwich'in Steering Comm.*, 10 P.3d at 579.

[25] *Capital Info. Grp.*, 923 P.2d at 36 (quoting *Paisley v. CIA*, 712 F.2d 686, 699 (D.C. Cir. 1983)).

"If a communication is not shown to be both predecisional and deliberative, then the public records statute applies and the document will likely be disclosed."[26] "If the privilege attaches, however, instead of there being a presumption in favor of disclosure, with doubtful cases being resolved by permitting public inspection, there is a presumption in favor of nondisclosure and the party seeking access to the document must overcome that presumption."[27] "[I]n balancing the interests . . . the scales must reflect the fundamental right of a citizen to have access to the public records as contrasted with the incidental right of the agency to be free from unreasonable interference."[28]

The balancing of interests under the deliberative process privilege is closely related to the balancing test that we apply in cases where there is no assertion of a specific privilege.[29] In those cases we "balance the interest of the citizen in knowing what the servants of government are doing and the citizen's proprietary interest in public property, against the interest of the public in having the business of government carried on efficiently and without undue interference."[30] "The deliberative process privilege affects th[is] balance . . . primarily by identifying more specifically what interest the government may have in maintaining confidentiality, in the form of the threshold showing that the

---

[26]     *Id.*

[27]     *Id.* at 37 (citation omitted).

[28]     *Gwich'in Steering Comm.*, 10 P.3d at 579 (ellipsis in original) (quoting *Capitol Info. Grp.*, 923 P.2d at 37).

[29]     *Capital Info. Grp.*, 923 P.2d at 36-37.

[30]     *Id.* at 36 (quoting *City of Kenai v. Kenai Peninsula Newspapers, Inc.*, 642 P.2d 1316, 1323 (Alaska 1982)).

communication is predecisional and deliberative.  It also outlines fairly rigid procedural requirements that the government must meet in order to claim the privilege."[31]

### b.  Attorney-client privilege and work-product privilege

We have never addressed how the attorney-client and work-product privileges interact with the Public Records Act.  But the common law has long recognized the privileged nature of attorney-client communications and attorney work-product.[32] And it is clearly in the public interest for a governmental agency to be able to receive confidential advice from its attorneys.[33]  We hold that the attorney-client and work-product privileges constitute state law exceptions to the Public Records Act.

---

[31]  *Id.* at 37.

[32]  *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." (citing 8 J. WIGMORE, EVIDENCE § 2290 (McNaughton rev. ed. 1961))); *Hickman v. Taylor*, 329 U.S. 495 (1947) (recognizing the work-product privilege for litigation); *Langdon v. Champion*, 752 P.2d 999, 1004 (Alaska 1988) (explaining that "[t]he 'work product doctrine,' first recognized [in *Hickman*], is part of Alaska's Civil Rule 26(b)(3)." (footnote omitted)); *United Servs. Auto. Ass'n v. Werley*, 526 P.2d 28, 31-33 (Alaska 1974) (applying common law attorney-client privilege); *Killington, Ltd. v. Lash*, 572 A.2d 1368, 1376-80 (Vt. 1990) (applying the common law work-product privilege to the Vermont Access to Public Records Act, Vt. Stat. Ann. tit. 1, § 317(b)(4) (1989)).

[33]  *See Gwich'in Steering Comm.*, 10 P.3d at 578 (recognizing that certain disclosures "would deter the open exchange of opinions and recommendations" and that certain privileges are necessary "to protect the executive's decisionmaking process, its consultative functions, and the quality of its decisions"); *City of Kenai*, 642 P.2d at 1323 (recognizing "the interest of the public in having the business of government carried on efficiently and without undue interference" (quoting *MacEwan v. Holm*, 359 P.2d 413, 421 (Or. 1961) (en banc))); *City of Orlando v. Desjardins*, 493 So. 2d 1027, 1029 (Fla. 1986) (noting "the imbalanced posture and the disadvantaged status of public entities" without the benefit of attorney-client privilege); *Killington*, 572 A.2d at 1379 (stating that not recognizing work-product privilege "would produce an anomalous and unfair result").

In *In re Mendel* we discussed "the appropriate procedure for the superior court to follow" when determining whether attorney billing records are subject to the work-product privilege: the court should conduct an in camera review of the billing records, and

> in conducting its in camera review[,] [t]he trial judge should redact the attorney's mental impressions, conclusions, opinions or legal theories . . . . The court should then give the attorney the opportunity to examine the redacted records and make any arguments as to why any of the unredacted material is subject to the [work-product privilege]. Only at this point should the relevant, unprivileged information be produced.[34]

This is the procedure the City Council and the superior court should have followed in this case. As with all exceptions to the Public Records Act, the attorney-client and work-product privileges should be "construed narrowly to further the legislature's goal of broad public access."[35]

---

[34] 897 P.2 68, 75 (Alaska 1995).

[35] *Capital Info. Grp.*, 923 P.2d at 33. In *Cool Homes, Inc. v. Fairbanks North Star Borough* we commented on the application of the attorney-client privilege to Alaska's Open Meetings Act, AS 44.62.310, saying, "The privilege should not be applied blindly. . . . Rather, the rationale for the confidentiality of the specific communication at issue must be one which the confidentiality doctrine seeks to protect . . . ." 860 P.2d 1248, 1262 (Alaska 1993). Griswold argues that *Cool Homes* makes the exceptions to the Open Meetings Act for attorney-client and work-product privilege narrower than their litigation counterparts — Alaska Evidence Rule 503 for attorney-client privilege; Alaska Civil Rule 26(b)(3) for work-product privilege — and he argues that this narrower privilege should be used for the exceptions to the Public Records Act. The City disagrees. It argues that *Cool Homes* does not apply to the Public Records Act and that if *Cool Homes* does apply, it does not require any further disclosure of the invoices. We need not decide the degree to which *Cool Homes* applies to the Public Records Act, and we need not address the scope of *Cool Homes* other than in the attorney invoices context. Assuming without deciding that *Cool Homes* applies to the Public Records Act, we

(continued...)

## 2. Communications relating to the Board's decision

Griswold argues that Holly Wells's communications regarding the Board's June 2014 decision are not privileged because Wells was acting as a neutral advisor to the Board. We disagree.

The deliberative process privilege applies to these communications.[36] They occurred before the decision was issued and contain give-and-take on the wording of the decision. They therefore qualify as predecisional and deliberative, establishing a

---

[35](...continued) conclude that it requires no further disclosure of invoices than would otherwise be required. *In re Mendel* provides the proper standard for the disclosure of invoices under the Public Records Act, with the privileges "construed narrowly to further the legislature's goal of broad public access."

[36]  The City does not argue here that deliberative process privilege applies to the communications. But the City does argue that the communications fall within the state law exception to the Public Records Act. This exception includes the balancing test that we apply if we determine that no more specific exception applies. *See Capital Info. Grp.*, 923 P.2d at 36-37. As explained above, the deliberative process privilege is a specific application of this balancing test and "affects the balance . . . primarily by identifying more specifically what interest the government may have in maintaining confidentiality, in the form of the threshold showing that the communication is predecisional and deliberative," as well as "outlin[ing] fairly rigid procedural requirements that the government must meet in order to claim the privilege." *Id.* at 37. Because the communications relating to the Board's decision fall squarely within the ambit of the deliberative process privilege, we choose to apply the more specific deliberative process privilege framework rather than the catch-all balancing test. Doing so does not prejudice Griswold because the deliberative process privilege is a more specific application of the balancing test, because Wrede identified the deliberative process privilege as a ground for withholding these communications in his denial of Griswold's public records request, and because Griswold briefed the deliberative process privilege in his opening brief on appeal in this court.

presumption of nondisclosure.[37] And balancing supports nondisclosure. As Griswold notes, Wells was acting as a neutral advisor to the Board sitting as a quasi-judicial body. Her role in drafting the Board's decision was analogous to that of a staff attorney for a court. A body making factual and legal determinations must be able to discuss freely its thoughts on a case. Disclosure of predecisional communications between members of judicial or quasi-judicial bodies and their supporting staff could undermine public confidence in the judicial process and "affect the quality of governmental decisionmaking."[38] Further, disclosure of the documents Griswold requested would serve little public purpose. The Board issued its decision and that decision was appealed.[39] Making public previous drafts of the decision or communications discussing those drafts would not change the decision or the appellate process.

We affirm the superior court's decision that the communications relating to the Board's decision are protected from public disclosure.

### 3. Attorney invoices

Griswold argues that none of the requested attorney invoices contain privileged information and that they should be fully disclosed. The City responds that all the invoices that were not disclosed, either initially by City Manager Wrede or by either the City or Levesque after the superior court's order, are privileged under attorney-client and work-product privileges and that the City should not have to disclose them.

The superior court's decision addressed only the two invoices that Wrede redacted. The City also submitted for in camera review 22 pages of invoices that it

---

[37] *See id.* at 36.

[38] *Gwich'in Steering Comm.*, 10 P.3d at 579.

[39] *See Griswold v. Homer Bd. of Adjustment*, No. 3HO-15-00021 CI (Alaska Super., Jan. 17, 2017), *appeal docketed*, No. S-16660 (Alaska Mar. 24, 2017).

withheld from Griswold. The court's decision did not address these withheld invoices. And in addressing the two redactions that Wrede made, it is not clear that the court applied the procedure we set out in *In re Mendel* or the narrow construction of attorney-client privilege and work-product privilege that the Public Records Act requires. We therefore vacate the order of the superior court with respect to the attorney invoices and remand for the court to review all attorney invoices in light of our discussion in this opinion.

On remand the superior court should follow the procedure set out in *In re Mendel*: it should review the invoices in camera and redact the attorneys' mental impressions, conclusions, opinions, or legal theories; it should then give the attorneys for the City the opportunity to examine the redacted records and make any arguments why any of the unredacted material is subject to either the attorney-client privilege or the work-product privilege as it applies to the Public Records Act.[40] The court should then make its final decision, and the relevant, unprivileged information should be produced.[41] When reviewing the attorney invoices, the superior court should construe the privileges narrowly.[42]

## B. Homer City Code

Griswold also argues that provisions of the Homer City Code (HCC or Code) require disclosure of the records he requested. The Code, like the Public Records Act, provides for the disclosure of records with a list of exceptions.[43] Because the Public

---

[40] *In re Mendel*, 897 P.2d at 75.

[41] *Id.*

[42] *Capital Info. Grp.*, 923 P.2d at 33.

[43] HCC 2.84.030, .040 (2017).

Records Act applies to municipalities,[44] the Code applies only to the extent it narrows the exceptions to disclosure and requires that more records be disclosed. The question then is whether the Code requires the disclosure of any information that could be withheld under the Public Records Act. We conclude the Code does not require any additional disclosure.

Homer City Code 2.84.030 provides that "[e]xcept as provided by HCC 2.84.040, or by other provisions of City, State, or Federal law, all nonexempt public records shall be open to inspection by any person during business hours, subject to any applicable regulations that may be adopted by the City Manager." Homer City Code 2.84.040 lists the following exceptions relevant to this case:

> a. Communications between an attorney for the City and the City, or any agency, officer, employee, or representative of the City, that are made confidentially in the rendition of legal services to the City or to a City agency, officer, or employee;

> b. Records prepared by any attorney for the City in the rendition of legal services or legal advice to the City or any agency, officer, employee or representative of the City . . . ;

> c. The work product of an attorney for the City . . . ;

> . . . .

> n. Records that are required or authorized to be kept confidential by a privilege, exemption or other principle recognized by law or the courts; [and]

> . . . .

> r. Records concerning deliberations and drafts of decisions in quasi-judicial proceedings conducted by the City or any City agency.

---

[44] *City of Kenai v. Kenai Peninsula Newspapers, Inc.*, 642 P.2d 1316, 1318-23 (Alaska 1982).

The plain language of HCC 2.84.040 excepts from disclosure the communications surrounding the Board's decision and those portions of the attorney invoices subject to the attorney-client and work-product privileges. The Code thus does not require the disclosure of any records that the Public Records Act excepts from disclosure.

## C. Attorney's Fees And Contempt

The superior court found that the City was the prevailing party and awarded it 20% of its attorney's fees under Alaska Appellate Rule 508(e)(4). Griswold argues that the superior court erred in awarding the City 20% of its attorney's fees because he, and not the City, was the prevailing party on appeal in superior court; because he was a public interest litigant; and because the award would deter similarly situated litigants. Because we vacate part of the superior court's decision, we also vacate its prevailing party decision and its attorney's fees award. We remind the superior court that the Alaska Legislature abrogated and replaced the common law public interest litigant doctrine with a constitutional claimant provision in AS 09.60.010.[45]

Griswold also argues that the City did not comply with the superior court's order when the City disclosed only one part of one redacted invoice. We construe this as an appeal of the court's denial of Griswold's motion for contempt. "In order for there to be contempt it must appear that there has been a willful disregard or disobedience of the authority or orders of the court."[46] The court's order directly addressed only the two redacted Birch Horton invoices, ruling that the hours billed and names of clients should not have been redacted but that the other items were properly redacted. In response, the City provided Griswold a new, less-redacted copy of the one Birch Horton invoice on

---

[45] *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 280-81 (Alaska 2015).

[46] *Taylor v. District Court*, 434 P.2d 679, 681 (Alaska 1967).

which hours billed and names of City employees had been redacted. This was a reasonable response to the court's order. The court did not clearly err in finding that the City did not willfully disregard or disobey its order.

## V.    CONCLUSION

We AFFIRM that portion of the superior court's order that held the communications relating to the Homer Board of Adjustment's June 2014 decision were excepted from disclosure under the Public Records Act and the Homer City Code. We also AFFIRM the superior court's denial of Griswold's motion to hold the City in contempt. We VACATE that portion of the court's order that held the attorney invoices Griswold requested were exempt from disclosure under the Public Records Act and the Homer City Code, and we VACATE the court's prevailing party determination and its attorney's fees award. We REMAND for further proceedings consistent with this opinion. We do not retain jurisdiction.